IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BOBBY DWAYNE PARKER | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-09-CV-0421-B |
| RICK THALER, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Bobby Dwayne Parker, a Texas prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

Petitioner was convicted of aggravated kidnaping and sentenced to 35 years confinement. His conviction and sentence were affirmed on direct appeal. *Parker v. State*, No. 05-05-00555-CR, 2006 WL 2076441 (Tex. App.--Dallas, Jul. 27, 2006, pet. ref'd). Petitioner also filed an application for state post-conviction relief. The application was denied without written order on the findings of the trial court. *Ex parte Parker*, WR-69,262-02 (Tex. Crim. App. Aug. 20, 2008). Petitioner then filed this action in federal district court.

II.

In three grounds for relief, petitioner contends that: (1) he received ineffective assistance of counsel; (2) the state failed to conduct an adequate investigation; and (3) he is actually innocent.

A.

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Pub.L. 104-132, 110 Stat. 1214 (1996). Where, as here, a state court has already rejected the claims raised by petitioner, a federal court may grant habeas relief only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 411-13, 120 S.Ct. 1495, 1522-24, 146 L.Ed.2d 389 (2000). A state court decision is contrary to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir.), *cert. denied*, 124 S.Ct. 2812 (2004), *citing Williams*, 120 S.Ct. at 1519-20. A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S.Ct. at 1523. To be unreasonable, the application of clearly established federal law must be more than merely incorrect. *Gardner v. Johnson*, 247 F.3d 551, 559 (5th Cir. 2001). The standard is one of "objective reasonableness." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 2220 (2001), *citing Williams*, 120 S.Ct. at 1521-22. Factual determinations made by state courts are presumed to be correct and are unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

B.

Petitioner contends that he received ineffective assistance of counsel because his attorney: (1) failed to call two Dallas police officers as defense witnesses; (2) did not ask for a mistrial after the prosecutor argued to the jury that certain witnesses were too scared of petitioner to testify at trial; (3) did not object or request a mistrial when the prosecutor commented on petitioner's failure to testify; and (4) failed to move for an acquittal due to the lack of corroborating evidence.

1.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Strickland*, 104 S.Ct. at 2064. Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *Id.* at 2067. There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *See Romero v. Lynaugh*, 884 F.2d 871, 876 (5th Cir. 1989), *cert. denied*, 110 S.Ct. 1311 (1990). In order to obtain federal habeas relief, a petitioner must affirmatively show how the actions of his attorney deprived him of a fair trial. *See Czere v. Butler*, 833 F.2d 59, 63-64 (5th Cir. 1987).

2.

Petitioner was charged with the aggravated kidnaping of his former girlfriend, Laquita Bennett. (*See* St. App. Tr. at 2). At trial, Bennett testified that petitioner forced his way into the house where she was staying, punched her in the stomach, forcibly dragged her outside, and drove

her to an apartment complex where her cousin, Sonda Eaton, lived. (*See* SF-III at 59-69). Upon arriving at the apartment complex, Bennett said that petitioner retrieved a gun from his car and held the weapon in his hand as they walked upstairs. (*See id.* at 69-70). Petitioner and Bennett remained at Eaton's apartment until the following morning. (*Id.* at 72). Although Bennett said that she was afraid of petitioner during this ordeal, (*see id.* at 72-74), Eaton told a different story. According to Eaton, petitioner and Bennett came by her apartment late in the evening, sat outside with Eaton and another man, and talked for three hours. (*See id.* at 129). Eaton testified that petitioner and Bennett were "not arguing like arguing, talking, you know, they wasn't fighting." (*Id.*). When Eaton asked Bennett if she and petitioner were going to stay overnight, Bennett said they were. (*Id.*). The next morning, Eaton claimed to have cooked all three breakfast. (*Id.* at 130). Petitioner did not testify at trial, but through defense counsel denied that he abducted Bennett. (*See* SF-IV at 16-18). Instead, counsel argued on behalf of petitioner that, at most, the evidence warranted a conviction for assault. (*Id.* at 19). The jury rejected this defense and convicted petitioner of aggravated kidnaping.

3.

Petitioner criticizes his attorney for failing to call two Dallas police officers, John Drennan and David Nevitt, who investigated the incident and allegedly would have testified that Bennett never told them she had been kidnaped. (*See* Pet. Mem. Br. at 8). In support of this claim, petitioner relies on a police report prepared by the officers, wherein Bennett said she had been assaulted by petitioner, but never mentioned the alleged kidnaping. (Hab. Pet., Exh. A). Had the police officers been called as witnesses, petitioner believes their testimony would have supported his defense and could have been used to impeach Bennett's testimony.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy[.]" *Day v. Quarterman*, 566 F.3d

527, 538 (5th Cir. 2009). Here, counsel made a strategic decision not to call Drennan and Nevitt. Instead of offering the testimony of these witnesses, defense counsel argued to the jury that the state failed to meet its burden of proof. Specifically, counsel argued:

> I would submit to you that there was little or no investigation done in this case, at least you didn't hear about any. You didn't hear from the officers that supposedly responded on the initial call that was made on May the 1st. You didn't hear from an investigator that supposedly picked up the ball, so to speak, picked up the case after the fact, to review this case and decide whether or not to file a charge. Why that was done, I don't know. I just know you didn't hear evidence about that from this witness stand.
>
> That's the only thing you can consider is what you actually heard under oath from the witness stand. If you have questions in your mind as to the thoroughness of the investigation and why that was done, then I think you should resolve those doubts or questions in favor of the defendant.

(SF-IV at 12-13). In view of the conflicting evidence presented at trial as to whether a kidnaping occurred, counsel decided to argue that the state failed to meet its burden of proof, rather than risk potentially damaging testimony from two hostile witnesses who were employed by the state and could have been cross-examined by the prosecutor. *See Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S.Ct. 1, 5, 157 L.Ed.2d 1 (2003) ("When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect."). Moreover, evidence that Bennett told the police she had been assaulted by petitioner would have contradicted the testimony of Sonda Eaton, who did not mention any such assault. Under these circumstances, counsel was not ineffective for failing to call the police officers as defense witnesses. *See Hopkins v. Cockrell*, 325 F.3d 579, 586 (5th Cir.), *cert. denied*, 124 S.Ct. 430 (2003) ("[A] tactical decision not to pursue and present potential mitigating evidence on the ground that it is double-edged in nature is objectively reasonable.").

4.

Nor was counsel ineffective for failing to ask for a mistrial after the prosecutor argued that certain witnesses did not testify at trial because they were scared of petitioner. During his closing argument, defense counsel pointed out that the state failed to call any eyewitnesses to the alleged kidnaping. (*See* SF-IV at 12-13). On rebuttal, the prosecutor argued:

> Defense counsel argued that a lack of an investigation was done or no investigation was done. Where are all these witnesses? Well, ask yourself, where are these people? . . . Do you want to know where those witnesses are? Sure. I do, too. Do you know why they don't want to come out here and testify and sit on the witness stand and swear to tell the truth? Because what happens if that small chance, what happens if in that small window of opportunity, this man gets back into that neighborhood?

(*Id.* at 22-23). When defense counsel objected that the prosecutor was arguing outside the record, the judge told the jury that "the attorneys are allowed to make reasonable deductions from the evidence[.]" (*Id.*). The prosecutor continued:

> Ladies and gentlemen, it is absolutely a reasonable deduction from the evidence that each and everybody in that neighborhood is in fear of Mr. Bobby Parker. You heard the evidence. You heard Laquita tell you about her friend Eric, who all he was doing was talking to--all she was doing was a friend, a man friend, a boy friend. They weren't even dating.
>
> And because she spoke with him, because Bobby Parker believes that Laquita Bennett is his property, he took it upon himself to beat Eric. Laquita told you Eric's a little man. He had to run away and left her all on her own. Her cousin was pregnant. Her friends had to leave. She told you, I laid on that ground and nobody called the police.
>
> Why? Think of the power and the control that this man has, not only over Laquita Bennett, who said, I'm too little to do anything but mind, but over his entire community. They call him Mister. That's his street name, Mister. He demands respects, and if he doesn't get respect, he takes it.

(*Id.* at 23-24). Because defense counsel criticized the state for failing to present eyewitness testimony, the prosecutor was entitled to argue that the witnesses were too scared of petitioner to testify--an argument that had ample support in the record. (*See* SF-III at 48-49). Counsel had no grounds for requesting a mistrial. *See Biffel v. Thaler*, No. 4-09-CV-0067-Y, 2010 WL 582149 at *9 (N.D. Tex. Feb. 18, 2010), *citing Berry v. State*, 233 S.W.3d 847, 859 (Tex. Crim. App. 2007) (recognizing that permissible jury argument includes answering the argument of opposing counsel).

In a related argument, petitioner contends that his attorney should have objected and asked for a mistrial when the prosecutor argued to the jury that "[t]here's nothing that [Bennett] said that can be refuted by anything." (*See* SF-IV at 26). Contrary to petitioner's contention, the prosecutor's jury argument was not an improper comment on his failure to testify. *See United States v. Rocha*, 916 F.2d 219, 232 (5th Cir. 1990), *cert. denied*, 111 S.Ct. 2057 (1991), *quoting Davis v. United States*, 357 F.2d 438, 441 (5th Cir.), *cert. denied*, 87 S.Ct. 284 (1966) ("The test for determining if a constitutional violation has occurred is whether 'the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'").

5.

Petitioner also claims that he received ineffective assistance of counsel because his attorney did not move for an acquittal due to the lack of corroborating evidence. However, under the Texas statute cited by petitioner, corroborating evidence is required only in certain types of cases. *See* TEX. CODE CRIM. PROC. ANN. art. 38.17 (Vernon 2005) ("In all cases where, by law, two witnesses, or one with corroborating circumstances, are required to authorize a conviction, if the requirement be not fulfilled, the court shall instruct the jury to render a verdict of acquittal, and they are bound by the instruction."). The cases requiring corroboration are those involving a sexual assault of a child, *see*

*id.* art. 38.07(b), accomplice testimony, *see id.* art. 38.14, and treason, *see id.* art. 38.16. Corroboration is not required in a kidnaping case. This ground for relief should be overruled.

### C.

Next, petitioner complains that the state filed kidnaping charges against him without conducting an adequate investigation. As best the court can decipher this claim, petitioner appears to contend that law enforcement personnel had a duty to investigate and uncover exculpatory evidence, but failed to do so, thereby depriving him of a fair trial. The court is unaware of any affirmative duty on the part of law enforcement to develop evidence to support an accused's defense. Nor has petitioner cited to any such authority in his brief. Consequently, federal habeas relief is not proper. *See Maxie v. Quarterman*, No. H-08-0937, 2008 WL 4056298 at *14 (S.D. Tex. Aug. 29, 2008) (rejecting claim that law enforcement conducted a flawed investigation because it failed to develop evidence favorable to the defense).

### D.

Finally, petitioner contends that newly discovered evidence establishes his innocence. A claim of actual innocence, standing alone, is insufficient to merit federal habeas relief. *See Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 1250 (2001), *quoting Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993). There also must be evidence of an independent constitutional violation in the state criminal proceeding. *Id.* at 741. No such evidence exists here.

Nor is there any compelling evidence of actual innocence. In support of his claim, petitioner relies on an affidavit provided by Bennett recanting her trial testimony. *See Ex parte Parker*, WR-69,262-02, Tr. at 53. However, recanting affidavits and witnesses are viewed with extreme suspicion by the courts. *See Spence v. Johnson*, 80 F.3d 989, 1003 (5th Cir.), *cert. denied*, 117 S.Ct. 519

(1996). "When a witness has testified, he has received the benefit of any bargain that he had with the state and has nothing to lose by recanting his testimony." *Bell v. Dretke*, No. 3-04-CV-0492-P, 2006 WL 770442 at *6 (N.D. Tex. Mar. 27, 2006). Moreover, at an evidentiary hearing conducted by the state habeas court, Bennett recanted her recanting affidavit and testified that "[e]verything I said in trial was true." *Ex parte Parker*, WR-69,262-02, Supp. Tr. at 14. In view of that testimony, the state court found that Bennett "was truthful in her testimony at the original trial and that Applicant is responsible for this crime." *Ex parte Parker*, WR-69,262-02, Tr. at 95, ¶ 1. Petitioner has failed to rebut that finding by clear and convincing evidence.

## RECOMMENDATION

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: March 4, 2010.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE